**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL WALKER, | : | Civil No. 3:24-cv-389 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| N.W. ANDERS, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Michael Walker ("Walker"), an inmate housed, at all relevant times, at the

State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced

this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants

are Corrections Food Service Instructor ("CFSI") Anders, CFSI Sheffield, Corrections Food

Service Manager Pittsinger, Hearing Examiner Ellenberger, Superintendent Rivello, and

Captain Wendle.  Presently pending before the Court is Defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14).  For the reasons set forth

below, the motion will be granted in part and denied in part.

I.    **Allegations of the Complaint**

Walker was employed as a food services worker while incarcerated at SCI-

Huntingdon.  (Doc. 1 ¶ 14).  On June 3, 2022, Walker filed Grievance Number 984093

against Defendant Anders asserting that she used inappropriate language towards him.  (*Id.*

¶ 15; Doc. 1-1).  The grievance was assigned to Defendant Pittsinger, who interviewed

Walker on June 13, 2022, regarding the events of the grievance. (Doc. 1 ¶¶ 16-18). During the interview, Walker reiterated his allegations against Anders. (*Id.* ¶ 19). Defendant Pittsinger then interviewed Anders regarding the grieved incident. (*Id.* ¶ 20). Walker eavesdropped on this interview and claims that Anders became agitated and shouted more inappropriate language about him. (*Id.* ¶ 21). Walker left the area and returned to his work assignment. (*Id.* ¶ 22). After Anders' interview, Walker alleges that she called him a coward for filing the grievance and stated that he would "feel [her] 'wrath.'" (*Id.*). On or about June 21, 2022, Defendant Pittsinger denied Walker's grievance. (*Id.* ¶¶ 23-24; Doc. 1-2).

Walker alleges that Anders continued to harass him throughout the summer of 2022 and that Defendants Pittsinger, Sheffield, and Rivello failed to intervene in his issues with Anders. (Doc. 1 ¶¶ 23-25, 27-33). Attached to the complaint are four Inmate Request to Staff Member slips addressed to Defendant Rivello complaining about ongoing retaliation, discrimination, and vindictiveness from Anders. (Doc. 1-3). The slips are dated June 19, 2022, July 8, 2022, July 19, 2022, and July 29, 2022. (*Id.*). There is no indication that Defendant Rivello received or responded to these inmate request slips. (*See id.*).

On August 5, 2022, Walker was working in the dining hall. (Doc. 1 ¶ 30). Defendant Anders allegedly stated, "Inmate Asshole—Walker is here and I promise that the day will come to[] great ending." (*Id.*). Walker alleges that he immediately approached Defendant-Supervisor Sheffield and requested that she speak with Anders regarding the continued

2

harassment. (*Id.* ¶ 31). Walker explained that he filed a grievance against Defendant

Anders, and, in response, Anders was harassing him. (*Id.* ¶ 32). Defendant Sheffield

allegedly stated that she would address the issue with Anders if she had time. (*Id.*). Walker

then completed his work assignment and exited the dining hall. (*Id.* ¶¶ 33-35). He alleges

that he walked past Defendant Anders in a narrow space and avers that he made no

physical contact with her. (*Id.* ¶ 35). Walker alleges that Defendant Anders yelled at him

and then left for the Security Control Center. (*Id.* ¶ 36). After this incident, Walker again

spoke with Defendant Sheffield and reported the interaction with Anders. (*Id.* ¶ 38).

Defendant Sheffield told Walker that she had not yet spoken with Anders. (*Id.*).

On that same date, August 5, 2022, Defendant Anders issued Misconduct Number

D434133 against Walker charging him with assault. (*Id.* ¶¶ 37, 43; Doc. 1-4). Defendant

Anders reported that Walker "struck [her] in [her] left shoulder." (Doc. 1-4). The shift

commander, Defendant-Captain Wendle, "reviewed, approved and authorized" the

misconduct and, thus, allegedly conspired with Defendant Anders. (Doc. 1 ¶¶ 37, 42, 44-

45). Walker alleges that "[a]s a direct and proximate result of Anders['] acts of

'[r]etaliation'…and defendants[] Pittsinger, Rivello and Sheffield's failures to '[i]ntervene[,]'"

he was placed in the Restricted Housing Unit ("RHU") as a result of this misconduct. (*Id.* ¶¶

39-41, 61-62).

On August 8, 2022, Walker appeared before Defendant-Hearing Examiner

Ellenberger regarding Misconduct Number D434133. (*Id.* ¶ 47; Doc. 1-6). Walker pled not

guilty. (*Id.*). He requested staff assistance from Defendant Pittsinger and requested that

Pittsinger be permitted to testify regarding Anders' motive for issuing the misconduct. (Doc.

1-5). Defendant Ellenberger denied these requests and found that Walker fully understood

the charges and could represent himself, and that Pittsinger was not a witness to the

incident. (*Id.*). Defendant Ellenberger approved Walker's request to review the video of the

incident. (*Id.*). Defendant Ellenberger ultimately found Walker guilty of the assault. (Doc.

1-6). Ellenberger found as follows:

> This HEX reviewed the video regarding this incident. Inmate Walker can be
> seen leaning against the serving line watching the female employee
> [Defendant Anders] at the muffin cabinet/cart. After the two inmates near the
> cabinet clear from the area, Inmate Walker is seen walking towards where
> CFSI Anders is standing, side stepping, and making physical contact with
> CFSI Anders his right shoulder area as he walks part.
>
> This HEX believes the written report of CFSI Anders, over Inmate Walker's
> denial, about how Inmate Walker did assault the female CFSI when he took
> two steps to the right and struck the female CFSI worker in her left shoulder
> with his right shoulder. A preponderance of evidence exists to support charge
> #1.

(*Id.*) (sic). Ellenberger sentenced Walker to sixty days disciplinary custody and loss of his

prison job. (Doc. 1 ¶ 55; Doc. 1-6).

Walker alleges that Defendant Ellenberger disregarded the video evidence and

denied him the opportunity to present witnesses. (Doc. 1 ¶¶ 47-49, 56-58). He further

asserts that Defendant Ellenberger chastised him for filing grievances and previously upheld

other misconducts after Walker had filed grievances against staff. (*Id.* ¶¶ 52-54).

After serving his sixty days in disciplinary confinement, Walker alleges that he was transferred to the State Correctional Institution at Forest due to a separation from Anders. (*Id.* ¶¶ 59-60; Doc. 1-9).

## II.   Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

5

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

III.    **Discussion**

A.    Personal Involvement of Pittsinger, Sheffield, Rivello, and Wendle

A defendant in a civil rights action must have personal involvement in the alleged

wrongs; liability cannot be predicated solely on the operation of respondeat superior.  *Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown

through allegations of personal direction or of actual knowledge and acquiescence;

however, allegations of knowledge and acquiescence must be made with appropriate

particularity."  *Id.*  Additionally, a plaintiff must show that "some affirmative conduct by the

supervisor played a role in the discrimination."  *Andrews v. City of Philadelphia*, 895 F.2d

1469, 1478 (3d Cir. 1990); *see also Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (supervising

officials do not violate the constitutional rights of the victims unless they have played an

"affirmative part" in the misconduct).

To state a claim under a theory of knowledge and acquiescence, a plaintiff must

allege both contemporaneous knowledge of the alleged wrongdoing and direct supervisory

authority over the subordinate actor.  *See Robinson v. Pittsburgh*, 120 F.3d 1286, 1293-94

(3d Cir. 1997) *abrogated on other grounds by Burlington Northern & Santa Fe Railway*

*Company. v. White*, 548 U.S. 53 (2006); *Chinchello v. Fenton*, 805 F.2d 126, 133-34 (3d

Cir. 1986).  In other words, a supervisor has no affirmative duty under § 1983 to take action

against an offending subordinate after the fact.  *Id.*  To be liable under a theory of

acquiescence, a supervisor must know that a subordinate is presently violating a prisoner's rights and fail to stop the violation. *Id.*

Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance").

To the extent that Walker seeks to hold Defendants Pittsinger and Rivello liable as a result of their handling grievances, or appeals of grievances, this claim is not viable. (Doc. 1 ¶¶ 16, 18, 20-24, 28-29, 44-45). As stated, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as Walker's claims against Defendants Pittsinger and Rivello are premised on their involvement in the grievance process, dissatisfaction with responses to grievances and concurrence in the administrative appeal process is not sufficient to establish personal involvement. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (nonprecedential) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).

However, Walker sets forth allegations against Pittsinger and Rivello beyond their mere involvement in addressing initial grievances and appeals of grievances. He alleges

that he spoke directly to Defendants Pittsinger and Rivello regarding his complaints about

Defendant Anders. (Doc. 1 ¶¶ 26-28). Walker avers that he complained to Defendants

Pittsinger and Rivello during the time that the alleged wrongdoing by Anders occurred. (*Id.*

¶¶ 26-28, 31-33, 38). Walker has adequately pled that Defendants Pittsinger and Rivello

Sheffield had contemporaneous knowledge of the alleged wrongdoing. The Court will deny

Defendants' motion to dismiss based on lack of personal involvement of Pittsinger and

Rivello.

Similarly, Walker alleges that he spoke to Defendant Sheffield during the time that

Anders allegedly issued the retaliatory misconduct. (Doc. 1 ¶¶ 26-28, 31-33, 38). Walker

avers that he informed Sheffield that Anders was retaliating against him for filing a

grievance against Defendant Anders. (*Id.* ¶ 32). Walker has adequately pled that

Defendant Sheffield had contemporaneous knowledge of the alleged wrongdoing. The

motion to dismiss based on lack of personal involvement of Sheffield will be denied.

With respect to Defendant Wendle, Walker alleges that Wendle was involved in

Anders' issuance of the alleged retaliatory misconduct. (Doc. 1 ¶¶ 44-45). He alleges that

Defendant Wendle approved the misconduct charge issued by Anders against Walker.

(*Id.*). He claims that Defendant Wendle failed to properly view the video footage of the

alleged incident and refused to take the necessary steps to discover whether the

misconduct was falsified. (*Id*. ¶ 45). Based on these allegations, the claim against Wendle

cannot be dismissed on the basis of lack of personal involvement.

B.    Civil Conspiracy Claims against Anders and Wendle

    1.    **Section 1983 Civil Conspiracy**

To demonstrate the existence of a conspiracy under Section 1983, a plaintiff must allege that two or more conspirators reached an agreement to deprive him of a constitutional right under color of law.  *See Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).  The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point."  *Twombly*, 550 U.S. at 557. A plaintiff must allege "facts that plausibly suggest a meeting of the minds" with specific facts addressing "the approximate time when the agreement was made, the specific parties to the agreement…, the period of the conspiracy, [and] the object of the conspiracy."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (holding conspiracy claims based on plaintiff's subjective suspicions and unsupported speculation were properly dismissed at screening).

Walker's complaint fails to meet the pleading standards for a civil conspiracy claim. The claims of conspiracy set forth in the complaint are speculative and conclusory.  (Doc. 1 ¶ 42).  Walker alleges, "[a]s a direct and proximate result of defendants[] Anders and Wendle's conspiracy, and/or 'meeting of the minds' to '[i]nterfere' with plaintiff's civil rights and liberties pursuant to §§ 1985(3) and 1983, plaintiff was escorted and placed into the

prison[']s[] RHU.")  (Doc. 1 ¶ 42).  In the absence of other well-pleaded factual assertions,

Walker's conspiracy claim amounts to little more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action, and, as such, fails as a matter of

law.  *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).  Therefore, Walker's

conspiracy claim, which is pled in a conclusory fashion without supporting factual detail, fails

to state a claim upon which relief may be granted.  The Court will dismiss the Section 1983

civil conspiracy claim against Anders and Wendle without prejudice and with leave to

amend.

### 2.    Section 1985(3) Civil Conspiracy

To prevail under § 1985(3), a plaintiff must prove the following elements: "(1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class

of persons of the equal protection of the laws, or of equal privileges and immunities under

the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either

injured in his person or property or deprived of any right or privilege of a citizen of the United

States."  *United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v.

Scott*, 463 U.S. 825, 828-29 (1983).  In the complaint, Walker simply states that Defendants

Anders and Wendle engaged in a "conspiracy, and/or 'meeting of the minds.'"  (Doc. 1 ¶

42).  Such conclusory allegations do not form the basis for a claim based on a violation of §

1985.  Additionally, Walker has failed to satisfy the identifiable class requirement of § 1985

by failing to identify a suspect class.  *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d

Cir. 2001) (stating that prisoners are not a suspect class). Further, "[a] conspiracy claim

based upon Section 1985(3) requires a clear showing of invidious, purposeful and

intentional discrimination between classes or individuals." *Robinson v. McCorkle*, 462 F.2d

111, 113 (3d Cir. 1972). Walker has failed to allege any type of race-based or class-based

discrimination that is invidious and failed to allege sufficient specific facts to support any

conspiratorial agreement actionable under § 1985(3). Mere conclusory allegations of

deprivations of constitutional rights are insufficient to state a claim under § 1985(3). *See*

*Robinson*, 462 F.2d at 113; *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 944, 948-

49 (3d Cir. 2019) (nonprecedential). Because Walker failed to plead any specific facts

showing that a conspiracy existed, his claim under Section 1985(3) fails as presently pled.

The Court will dismiss the Section 1985(3) claim against Anders and Wendle without

prejudice and with leave to amend.

### C.   Sovereign Immunity

Defendants also seek dismissal of Walker's state law claims, arguing that the

doctrine of sovereign immunity bars these claims against state employees. (Doc. 15, pp.

20-21). Defendants are entitled to sovereign immunity with respect to Walker's state law

claims as it is beyond dispute that "[t]he Department of Corrections is an agency of the

Commonwealth and the Defendants, as employees of an agency of the Commonwealth, are

entitled to the protection afforded by sovereign immunity." *McGrath v. Johnson*, 67

F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing *Maute v. Frank*, 441 Pa. Super. 401, 402, 657

A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); *Robles v.*

*Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same). As a

general matter, subject only to ten specific statutory exceptions not applicable here, this

sovereign immunity bars state law tort claims like the one alleged here, since

Commonwealth employees are immune from liability for either negligence or intentional

torts.[1] *McGrath*, 67 F.Supp.2d at 511. Therefore, the Court will dismiss the state law

claims.

     D.    <u>Failure to Intervene Claim against Pittsinger, Rivello, and Sheffield</u>

     Walker alleges that Defendants Pittsinger, Rivello, and Sheffield had a realistic and

reasonable opportunity to intervene and prevent Anders' alleged retaliation against him, but

failed to do so. Walker asserts that he submitted requests, grievances, or other

communications to Defendants Pittsinger, Rivello, and Sheffield who failed to intervene both

before and after the fact with respect to the issues raised in these communications. This

claim fails because the Third Circuit has never recognized a failure to intervene claim

outside of the excessive force context or the custody sexual assault context. *See Weimer v.*

*Cnty. of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020); *see also Thomas v. City of Harrisburg*,

---

[1]    The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 Pa. Cons. Stat. Ann. § 8522(b).

88 F.4th 275, 285 (3d Cir. 2023), *cert. denied*, 2024 WL 4426554, at *1 (U.S. Oct. 7, 2024),

and 2024 WL 4426555, at *1 (U.S. Oct. 7, 2024) ("Though we have recognized a right to

have a government actor intervene when the underlying constitutional violation involves

excessive force or sexual assault of a person in custody or detention, we have since

concluded that our precedent does not establish, let alone clearly establish, a right to

intervention in other contexts."); *Lozano v. New Jersey*, 9 F.4th 239, 246 n.4, (3d Cir. 2021).

"[A] corrections officer's failure to intervene in a beating can be the basis of liability

for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable

opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641,

650 (3d Cir. 2002).  Although "[i]t is well-established…that both police and corrections

officers must 'take reasonable steps to protect a victim from another officer's use of

excessive force,'" *Weimer*, 972 F.3d at 191, "[t]his duty to intervene…has not been

extended beyond the excessive use-of-force context or the custody-sexual-assault context,"

*Wertz v. Inmate Calling Solutions, LLC*, 2024 WL 989405, at *7 (W.D. Pa. March 7, 2024)

(discussing *Weimer*, 972 F.3d at 191).

Walker's allegations do not support a Section 1983 failure to intervene claim.

Although correctional officers have a duty to intervene to protect an inmate "from another

officer's use of excessive force," *Smith*, 293 F.3d at 650, and from ongoing sexual assault,

*Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018), such a duty does not apply to the facts

presented in the complaint.  The conduct Walker complains of is the issuance of a

misconduct by Defendant Anders, which resulted in placement in disciplinary custody and loss of a job. Walker does not allege that Pittsinger, Rivello, or Sheffield used excessive force or any physical force at all during their interactions. Accordingly, Defendants Pittsinger, Rivello, and Sheffield cannot be held liable for failure to intervene. *See Armstrong v. Furman*, 2020 WL 5545270, at \*6-7 (W.D. Pa. Sept. 16, 2020) (allegations of failure to intervene to stop a First Amendment violation were so markedly different from failure to intervene claims recognized by the Court of Appeals under the Eighth Amendment that no reasonable officer could have been on notice that this new theory would violate a clearly established right). Walker's failure to intervene claim fails as a matter of law and will be dismissed.

       E.    *Procedural Due Process Claim against Ellenberger*

       The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The United States Supreme Court has mandated a two-part analysis of Fourteenth Amendment procedural due process claims. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977). First, the reviewing court must determine "whether the asserted individual interests are encompassed within the…protection of 'life, liberty or property.'" *Id.* If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" *Id.* If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed

when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at

*5 (M.D. Pa. Sept. 18, 2017).

"To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the

procedures available to him did not provide 'due process of law.'" *Hill v. Borough of*

*Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d

Cir. 2000)).

The filing of a false disciplinary misconduct alone does not violate a prisoner's

constitutional rights, even if it may result in the deprivation of a protected liberty interest.

*See Hutchinson v. Kosakowski*, 2015 WL 3737656, at *4 (M.D. Pa. 2015) (citing *Freeman v.*

*Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  However, inmates must be provided due

process of law prior to being deprived of a protected liberty interest.  *Id.*  Accordingly, "so

long as certain procedural requirements are satisfied, mere allegations of falsified evidence

or misconduct reports, without more, are not enough to state a due process claim." *Id.*

(citing *Smith*, 293 F.3d at 654; *Freeman*, 808 F.2d at 953).

Defendants move to dismiss Walker's claim for violating his due process rights under

the Fourteenth Amendment.  (Doc. 15, pp. 23-25).  In support of their motion to dismiss,

Defendants argue that Walker does not state a claim for violating his due process rights

because he was afforded a hearing on the misconduct, and he has not alleged that he suffered an "atypical hardship." (*Id.*).

In response, Walker argues that he has adequately alleged that he suffered an "atypical hardship" and that the disciplinary proceedings violated his due process rights because the charges were not supported by "some evidence," as required. (Doc. 20-1, pp. 26-29).

Upon review, the Court will deny the motion to dismiss the Fourteenth Amendment due process claim. The United States Court of Appeals for the Third Circuit has recognized that "[p]rison disciplinary proceedings may…constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." *Smith*, 293 F.3d at 653; *see also Bond v. Horne*, 553 F. App'x 219, 224 (3d Cir. 2014) (nonprecedential). "Even if the discipline is initiated in retaliation for a protected act, however, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports." *Cooper v. Pa. Dep't of Corr.*, 756 F. App'x 130, 135 (3d Cir. 2018) (nonprecedential) (citing *Smith*, 293 F.3d at 653).

Walker alleges that Defendants brought false misconduct charges in retaliation for his constitutionally protected conduct. Walker may have had the opportunity to confront and challenge the retaliatory misconduct report through a misconduct hearing and the grievance process. However, at this preliminary stage and given Walker's alleged inability to present

certain evidence at his misconduct hearing, the parties should be granted an opportunity to develop the record as to this claim. Accordingly, the Court will deny the motion to dismiss as to Walker's Fourteenth Amendment due process claim against Ellenberger.

### F.    Retaliation Claim against Anders

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. To state a retaliation claim, a plaintiff must plausibly plead that (1) he engaged in protected activity; (2) officials took an adverse action against the plaintiff; and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal

quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Retaliatory motive can be inferred from either: "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

For purposes of the motion to dismiss, Defendants "do not contest that Plaintiff has pled a *prima facie* case of retaliation against Anders." (Doc. 15, p. 25 n.7). However, Defendants argue that Anders is nevertheless entitled to the "same decision defense." (Doc. 15, p. 25). Defendants argue that the inmate misconduct cannot be deemed as adverse action for Walker's retaliation claim because the hearing examiner, Defendant Ellenberger, found Walker guilty of the misconduct charge. (*Id.*).

As for Defendants' argument that they still would have made the same decision, it is premature to reach this finding based solely on the pleadings. Given Walker's plausible claim of retaliatory action, he should be granted an opportunity to develop the record on this

point. Therefore, the Court will deny Defendants' motion to dismiss as to the First

Amendment retaliation claim against Anders.

G.    Equal Protection Claim against Pittsinger

The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under

the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected

class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the

plaintiff does not claim membership in a protected class, he must allege arbitrary and

intentional discrimination to state an equal protection claim. *See Village of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the

defendant treated him differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v.*

*Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). However, prison inmates are not

members of a protected class. *See Abdul-Akbar*, 239 F.3d at 317 (stating that prisoners are

not a suspect class). Walker generally alleges that Defendant Pittsinger engaged in racial

discrimination. (Doc. 1 ¶¶ 105-07). However, he fails to allege how Defendant Pittsinger

treated him differently than others similarly situated. Additionally, Walker fails to identify any

specific personal involvement by Pittsinger that would subject him to liability for any alleged

equal protection violation. The Court will dismiss the equal protection claim without prejudice and with leave to amend.

## IV.  Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

The Court finds that the pleading deficiencies of the following two claims are largely factual in nature and thus conceivably could be cured by an amended pleading: (1) the conspiracy claims against Anders and Wendle; and (2) the equal protection claim against Pittsinger. Therefore, the Court will grant Walker leave to amend these two claims.

However, Walker's state law claims, and failure to intervene claim against Pittsinger, Sheffield, and Rivello, are factually and legally flawed; therefore, granting leave to amend these claims would be both futile and inequitable.

**V.      Conclusion**

For the reasons set forth above, Defendants' motion (Doc. 14) to dismiss will be granted in part and denied in part.  The Court will grant Defendants' motion to dismiss the conspiracy claims against Anders and Wendle, and the equal protection claim against Pittsinger, without prejudice and with leave to amend.  The Court will grant Defendants' motion to dismiss the state law claims, and the failure to intervene claim against Pittsinger, Sheffield, and Rivello, with prejudice and without leave to amend.

The motion to dismiss will be denied in all other respects.

A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: January ___13___, 2025